IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **BARBARA SPEARS**, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:11-CV-00385-KOB |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On August 15, 2006, the claimant, Barbara Spears, applied for disability insurance benefits under Title II of the Social Security Act. (R. 20). The claimant alleges disability commencing on May 31, 2006 because of fibromyalgia with chronic back pain. (R. 11). The Commissioner denied the claim, and the claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ). The ALJ held a hearing on December 2, 2008. (R. 9). In a decision dated April 7, 2009, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and thus, was ineligible for disability insurance benefits. (R. 15). On December 3, 2010, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II. ISSUE PRESENTED

The claimant presents the following issue for review: whether the ALJ properly applied the Eleventh Circuit's three-part pain standard in denying the credibility of the claimant's allegations of pain.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No. . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant has a sixth-grade education and was forty-eight years old at the time of the administrative hearing. (R. 27, 26). Her past work experience includes employment as a general manager in fast food restaurants and a nursing home cook. (R. 121). The claimant alleges that she is unable to work because of severe pain resulting from fibromyalgia. (R. 28). The claimant also suffers from chronic obstructive pulmonary disease (COPD) and smokes more than one-half a pack of cigarettes a day; however, on appeal, the claimant did not contest the ALJ's findings regarding the impact of her COPD and smoking habits on her ability to work. (R. 22). The claimant testified that she was diagnosed with fibromyalgia in 2001 and has felt pain in her muscles and body tissue every day since then. (R. 27).

*Physical Limitations*

In 2001, the claimant began to experience pain in her feet and legs. (R. 134). On January 4, 2002, Dr. Charlie Williams, an examining consulting physician, treated the claimant at Stringfellow Memorial Hopsital for pain in her right foot. (R. 154). Dr. Williams ordered a bone scan, which indicated an abnormal area of increased activity in the claimant's right foot, and suggested a follow-up MRI or CT. Dr. Williams also gave the claimant trials of Indocin and Celebrex, which provided her some relief. (R. 155, 160). On January 23, 2002, Dr. Gordon Townsend Hardy, an examining consulting physician, also treated the claimant for pain in her right foot; Xrays of the claimant's foot showed no plain radiographic findings. Dr. Hardy prescribed more Celebrax as well as Lorcet for her pain. (R. 160).

On March 29, 2002, Dr. Morton Rickless of Stringfellow Memorial Hospital, an examining consulting physician, performed an MRI lumbar of the spine, which presented

evidence of neither a herniated disk nor spinal stenosis. (R. 152). The claimant was to be admitted for same day surgery at Stringfellow on April 10, 2002 to treat her knee pain, but the procedure was cancelled. (R. 145).

On November 19, 2002, the claimant followed up with Dr. Hardy and the focus of the claimant's pain shifted from her foot to her lower spine and hip area. Xrays and MRIs of the claimants lumbar spine, legs, and feet showed "mild degenerative changes," but were otherwise normal. Dr. Hardy recommended epidural steroid injections for the claimant's pain. (R. 159).

On September 25, 2003, the claimant visited Dr. Scott Weisberg of Physicians Care, an examining consulting physician, for treatment of right hip and knee pain. (R. 182). Dr. Weisberg examined the claimant and concluded that her range of motion of the cervical spine showed full extension and rotation without apparent pain or discomfort. The motor strength of the claimant's hip was normal, and she proved able to do a leg raise, squat, and deep knee bend without weakness. Dr. Wesiberg advised conservative treatment with anti-inflammatory medication, muscle relaxants, and physical therapy. (R. 183). Dr. Williams referred the claimant to Dr. Timothy Tabor, an examining consulting physician, and on September 29, 2003, Dr. Tabor also conducted an MRI of the claimant's lumbar spine, which showed that her alignment was normal. (R. 185).

On August 10, 2004, the claimant sought treatment from Dr. Russell Ingram, a treating physician, for pain in her right foot that ran up her leg into her back and pain in her neck. Dr. Ingram noted that the symptoms were a likely result of a spinal disease. (R. 256). Additionally, Dr. Ingram sent the claimant to Dr. Tabor, who performed an Xray of the claimant's spine. Dr. Tabor found "mild degenerative change. . . in the facets at L5-S1," relating to the claimant's

sciatica pain and a "slight straightening of the normal cervical lordosis suggestive of muscle spasm." However, Dr. Tabor found that the study was otherwise unremarkable. (R. 204).

On May 9, 2006, Dr. Vishala Chindalore, a treating physician, also gave the claimant a physical exam to assess her alleged back pain. Dr. Chindalore concluded that the claimant suffered some back spasms, but that her hands, wrists, elbows, shoulders, ankles, knees and hips had good range of motion without any effusions. On May 24, 2006, Dr. Chindalore noted that the claimant was suffering a pain level of two or three in her hip. The claimant continued to express back pain, but did not take samples of Lyrica Dr. Chindalore offered her. Dr. Chindalore also noted that the claimant seemed to be feeling much better. The claimant still exhibited good range of motion of both hands, wrists, elbows, shoulders, ankles, knees, and hips. Additionally, the claimant's LS spine flexion was within normal limits. (R. 188).

On May 31, 2006, Dr. Ingram noted that the claimant suffered from pain in the lower back and the right SI joint. Additionally, the claimant may have been suffering from a little sclerosis at the SI joints. Dr. Ingram recommended the claimant take off work for two weeks, while going to physical therapy and continuing Flexeril and Ibuprofen. (R. 253).

On June 1, 2006, at Dr. Ingram's suggestion, the claimant began rehabilitation services under the care of Jerry L. Klug, a physical therapist. (R. 231). Mr. Klug's records indicate that at the outset of physical therapy, the claimant could exercise her upper extremity function and ambulate independently; complete short-term standing tasks; independently climb stairs; complete self-help skills and transfers independently; and had good balance. Mr. Klug also noted that the claimant could independently bathe, dress, cook, clean, drive, and groom and feed herself. (R. 247). The claimant also exhibited a functional level of 62 out of 100 and a pain level

of 30 out of 100. (R. 231).

On June 21, 2006, Dr. Ingram noted that the claimant still felt pain in the right hip and groin area. He also noted that physical therapy and injections helped some, but that the claimant might be suffering from "Fibromyalgia Reflex Dystrophy," which could "only be minimally treated and [would] be disabling for her." (R. 253). On July 7, 2006, Dr. Ingram noted that though the claimant's pain was better after an injection, her lower back, sacrum, and right hip still hurt. However, Dr. Ingram perceived Dr. Chindalore's X-rays to be normal. (R. 252). On August 16, 2006, the claimant told Dr. Ingram that she was considering disability for her fibromyalgia, because she could no longer keep up with her work (R. 251). On August 27, 2006, the claimant told Dr. Ingram that she wanted to continue taking her prescribed pain medicine because it was helping with her hip pain and muscle spasms. Dr. Ingram also prescribed Ambien to help the claimant sleep. (R. 255).

On October 25, 2006, Dr. Kishin Gehi, an examining consulting physician, performed a disability determination examination on the claimant. (R. 259). The claimant's musculoskeletal exam showed that "the patient [had] full range of motion of all the joints," despite complaints of some pain in her right hip. Dr. Gehi diagnosed the claimant with chronic back and hip pain and chronic obstructive airways disease. (R. 260).

On November 1, 2006, Dr. Ingram suggested that the claimant was suffering from Neuropathic pain, because she had been to multiple specialists over the course of five years and had not been able to find the source of the pain. On November 30, 2006, Dr. Ingram advised the claimant to return to work as soon as the functional assessment was done, because it would help with her depression. (R. 286). The claimant testified that, in 2007, she was prescribed Neurontin

7

at Quality of Life Health Services. (R. 183). The claimant still takes Neurontin despite the extreme drowsiness it causes. (R. 28, 41).

### *The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits, the claimant requested and received a hearing before an ALJ. (R. 9). At the hearing, the claimant testified that she experiences pain in the muscles all over her body. (R. 30). She testified that as the pain increases, it runs up her neck, and that her pain sometimes reaches a level of seven, eight, or nine on a scale of one to ten. (R. 31).

The claimant testified that even after taking the Neurontin, she is only able to rest four or five nights of the week. (R. 30). The claimant also testified that the Neurontin makes her drowsy until approximately 1:00 pm every day and that it would prevent her from working. (R. 34). She testified that she also went to physical therapy, stretches, and takes Tylenol, Robaxin, Ibuprofen, and Backaid, but that she still feels pain. She indicated that the pain intensifies when she bends. The claimant testified that her husband assists her with the housework because she is unable to do it alone. (R. 33, 37).

The claimant testified that she can sit for thirty minutes at a time before stretching or walking for five or ten minutes at a time. (R. 38). She also testified that approximately four or five days a week she feels so much pain that she must lie down up to three hours. (R. 32). The claimant testified that she still drives and can go to the grocery store unaccompanied, but that she is unable to lift anything because doing so pulls the muscle in her right hip. (R. 35, 38-39). She also testified that her pain sometimes makes walking up three to five stairs difficult. (R. 40).

A vocational expert, Mr. Hare, testified concerning the type and availability of jobs that

the claimant was able to perform. He stated that her management skills may be transferable to jobs as a scheduler, order taker supervisor, or order taker. The ALJ asked Mr. Hare if job opportunities exist for an individual with the claimant's education and work experience who could lift 50 pounds occasionally and 25 pounds frequently; stand walk or sit about six hours in an eight hour workday; needed to work in a temperature-controlled environment; and could frequently bend, stoop, squat, or climb. Mr. Hare responded that under these constraints, the claimant could be a packager, electrical assembler, or ticket seller. The ALJ then asked Mr. Hare to identify any sedentary work opportunities that he believed the claimant could perform. Mr. Hare replied that the claimant could work as a wire wrapper, eye glass frames polisher, or an optical goods assembler. (R. 44-47).

The ALJ further questioned Mr. Hare by asking whether an individual's inability to concentrate for a two-hour period because of chronic pain and medication side effects would impact her ability to work in jobs in the sedentary categories. Mr. Hare replied that an individual would need to concentrate for a two-hour period to perform simple jobs. Specifically, Mr. Hare testified that the claimant's inability to concentrate for a two-hour period would preclude all work. (R. 47).

The ALJ concluded his examination of Mr. Hare by asking him to identify employment opportunities that the claimant could perform if she could only occasionally lift and carry 10 pounds or less, required a sit/stand option, and was "unable to stay awake due to medication side effects." (R. 47). Mr. Hare responded that an individual would need to stay awake to do any job and that the claimant's inability to stay awake would preclude all work. (R. 48).

*The ALJ's Decision*

On April 7, 2009, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 15). First, the ALJ found that the claimant met the insured status requirements of the Social Security Act through December 31, 2010. Next, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of her disability. The ALJ then found that the claimant's fibromyalgia and chronic back pain qualified as severe impairments; he concluded, however, that these impairments did not manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 11).

The ALJ next considered the claimant's subjective allegations of pain to determine whether she had the residual functional capacity to perform past relevant work or sedentary work lifting and carrying 10 pounds occasionally and less than 10 pounds frequently with a sit/stand option. The ALJ found that the claimant was unable to perform past relevant work, but that the claimant had the residual functional capacity to perform sedentary work. The ALJ found "that the claimant's medically determined impairments could reasonably be expected to cause the alleged symptoms," but that the claimants allegations of the severity of the symptoms were not credible and "the evidence overwhelmingly support[ed] the ability to perform lesser demanding work activity." (R. 12-13).

To support his conclusion, the ALJ referenced the treatment notes of Dr. Rickless, Dr. Chindalore, Dr. Weisberg, and Jerry L. Klug, the claimant's physical therapist. The ALJ found that Dr. Rickless' records indicated the ability to perform sedentary work because "no evidence of disc herniation or stenosis" existed. (R. 13). The ALJ reasoned that Dr. Chindalore and Dr. Weisberg's records also supported his conclusion because they indicated that the claimant

"retain[ed] adequate range of motion of the spine." Next, the ALJ relied on Mr. Klug's report to support his conclusion because it indicated that the claimant could "ambulate independently and without the need for an assistive device." The ALJ also noted that the claimant testified at the hearing that she believed she could work with a sit-stand option and that "no documented medical basis underlying [the claimant's] need to lie down several times a week for a period of three hours" existed. The ALJ concluded that "no medical assessments indicating disability" existed and that the "reports consistently reveal[ed] findings to support the ability to perform sedentary work." (R. 13).

Based on the record as a whole, the ALJ concluded that the claimant's subjective allegations of pain were not credible, because the inconsistency between the objective medical evidence and the claimant's subjective allegations undermined the credibility of her "statements concerning the intensity, persistence and limiting effects of [her] symptoms." The ALJ concluded that the claimant is "reasonably limited to lift and carry in sedentary range due to back pain." (R. 13). Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 29).

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The three-part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921

F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id*.

In this case, the ALJ conceded that the claimant suffers from an underlying medical condition capable of generating pain; however, he found that the entirety of the medical evidence failed to support the claimant's alleged severity of pain.

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain. First, he referenced the claimant's visit to Dr. Rickless on March 29, 2002 in noting that the MRI lumbar of the spine presented evidence of neither a herniated disk nor spinal stenosis. Next, the ALJ considered the claimant's visits to Dr. Chindalore on May 24, 2006 and Dr. Weisberg on September 25, 2003. Dr. Chindalore found that the claimant's LS spine flexion was within normal limits. In addition, Dr. Weisberg examined the claimant and concluded that her range of motion of the cervical spine showed full extension and rotation without apparent pain or discomfort. The ALJ reasoned that Dr. Chindalore and Dr. Gehi's findings supported the functional capacity assessment

and further indicated that the claimant had adequate range of motion of the spine.

Finally, the ALJ considered the claimant's testimony in the hearing and noted that, although she alleged severe pain, she believed that she could return to work if she had a sit/stand option. The ALJ also noted that no objective medical evidence in the record supported the claimant's need to lie down three hours several times a week. Additionally, the ALJ stressed that the record consistently supported the claimant's ability to do sedentary work and that no opinion evidence existed indicating that the claimant was disabled.. The ALJ concluded that the claimant's fibromyalgia and chronic back pain could "reasonably be expected to cause the alleged symptoms," but that the lack of objective medical evidence supporting the claimant's allegations of severe pain ultimately undermined the credibility of her statements.

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's three-part pain standard and that substantial evidence supports his decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 19th day of March 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE